Good morning. May it please the court. I'm Kirk Kennedy, counsel for the appellant, Mr. Lane. I'd like to reserve a couple minutes on the end for rebuttal, if I may. I wanted to first address the issue of Mr. Lane's medical separation, which was, in essence, his termination in this case. Clark County has a process that's delineated in their merit personnel system to get to a medical separation. It's very specific. It's itemized. It's point by point on a process that must be followed before you can jump to a medical separation. That process, in the book and by the book, requires the department head to find that a medical certification is necessary. He or she will then contact the H.R. department with the county and tell them to initiate a process to select a state-licensed medical provider. The risk management department will then do two or three different things. They're going to select that person, that state-licensed provider. They're going to pay for him, and they're going to set the appointment. What does that have to do with the claim in front of us? It all goes to his termination. He was terminated because, in part, he had an ADA claim, a disability claim. Well, that's the claim in front of us. I'm not sure how a purported failure to follow the state-mandated process speaks to the claim in front of us. Well, it speaks to it, Your Honor. Our contention is that that's retaliatory to have terminated him when he had a valid, protected activity, ADA claim that he had been pursuing with the county. And the point I was trying to get across is the process I just outlined was completely ignored by the county. The county did not use and hire an independent state-licensed provider. They used Mr. Lane's own medical providers, both of whom, Dr. Racoma and Dr. Collins, had said that Mr. Lane could perform his job with a reasonable accommodation, and they gave those suggestions. The county at no point would implement those suggestions. So the county used his own doctors who were saying he could do his job with these reasonable accommodations to then jump to the idea to support a medical separation. And that point I wanted to get across because I believe it's a viable part of this lawsuit. His ADA claim was essentially cast aside. The county refused to accommodate his disability and used this medical separation process, I believe, in a retaliatory manner to get rid of it. We have to back up just a bit. So you're up here. The district court granted summary judgment, right? Yes, yes. On your ADA claim. Yes. Correct? And the district court said a couple of things. He said he was not qualified with or without an accommodation, correct? Yes, Judge Mahan said that. What was wrong with that determination? Judge Mahan's order said he was not qualified in part because of all of his absences. He took Mr. Lane had missed a lot of work. He took all approved time, FMLA time, his leave time, his sick time. And Judge Mahan believed in the district court below that his repeated absences, which were related to his anxiety disorder and his depression, made him unqualified for his job. All right. So there was also – there didn't seem to be any dispute over the duties of the job, correct? No. No, I don't think there are. There was the description of the job duties and whatnot. Right. He was a shopkeeper at the time. Right. So what's wrong with the determination that he needed to be present at work to do the duties of the job? I would agree that certainly one has to be at work to enjoy the benefits of work. Well, I'm not talking about the benefits of work. I'm talking about doing the duties that are required of the shop manager, whatever his title was. This is somewhat circular, if I may, Your Honor. He was not at work because the county was not accommodating him. He had to take time off. He couldn't get the accommodations that were being recommended by his own doctors. But the accommodations included not being at work. Well, he would be at work – for example, Dr. Collins recommended that a reasonable accommodation in his medical opinion was that Mr. Lane be provided the opportunity for some sort of a job coach or a mentor or some sort of group counseling. Dr. Racoma said – recommended that if he was having a panic attack or an anxiety attack, he should be allowed to stop working completely and sort of get over that attack. Now, those two very simple things, those simple recommendations by his doctors, were never allowed to be implemented. I thought the suggestion was that if he has a panic attack, he may well need to be off work. He may need to accommodate at least one to three weeks. Right. And there was no – there was no real assessment of how frequently or, you know, how rarely he might have a panic attack. I would admit there are a number of doctor's notes you may have seen in the record on appeal from Dr. Racoma principally, and several of them were saying, please allow him off for a few weeks. We're not talking about somebody else that the county made him see. Right. His doctors, at least one of them, says he may need two to six weeks leave and he might need that two to three times a year. So the accommodation being requested is not be at work for extended periods. Now, how is that consistent with the question Judge Pai has asked before? How are you qualified to do a job where you've got to be there if you're just not going to be there for big chunks of the time? I think a lot of it had to depend on the nature of treatment that Mr. Ling was getting. If he was getting adequate treatment from his doctors and allowed to implement these suggested accommodations, he could do his job. It was the doctor note that said this is expected to happen two or three times a year. I understand, Your Honor. I'm just focusing on what the accommodations were. If you're telling me that's not true, you're going to have to argue against it. No, I wouldn't argue against what the doctor said. So if it's going to be true that he's going to be gone two or three times a year for maybe two to six weeks each time, how can he do the job? That's assuming he had those panic attacks and episodes that required him to. But that's what his doctor told the county to anticipate. I appreciate that. I appreciate that, Your Honor. I guess to go back to justifies his question, the point I saw with his failure to attend work is that the point I'm trying to make is that all of his time, when he took the time off, it was authorized by the county, and he had to take it off because he wasn't getting that accommodation from the county. He wasn't allowed to have this job coach, this mentor. And I know the county has argued, well, those aren't even reasonable accommodations. In fact, the county has an employee assistance program run by an individual named Felicia Lipkin or Lipnett, I believe, who is someone that someone can go to, an accounting employee can go to to talk about things. That's what Mr. Lane needed, and he had the resources available. But the other part of this case, as I understand it, was that there was no real engagement in the interactive process. Right, right, right. Is that the point? The ADA, of course, anticipates that there should be an interactive dialogue between the employee and the employer to figure out what would be a reasonable accommodation. And it's our contention that that interactive dialogue did not occur in this case, at least towards the end when the separation occurred. And the county had basically bypassed that and instead went straight to this idea of separating him from employment to essentially be rid of him. And it's our contention that there was. I thought there was. Well, you can correct me if I'm wrong, but I thought there was. They invited him to go to the, who was the person that the, they had a point person who was available to work with various ADA kinds of issues? Well, I'm not sure if you're thinking of this Felicia Lipnett with the employee assistance program or not. He did have counsel. There is a period of time in the record where Mr. Lane did have another attorney who did have some dialogue back and forth with Janet Witt, who is the Clark County manager who was involved in this case. And that occurred, I believe, in April, May of 2009, I believe. And so there was some dialogue, but it did not result in any level of accommodation. We did have Dr. Racoma and Dr. Collins giving their medical certifications with suggested accommodations in June and July of 2009, and then after July is when he was no longer at work. However, was there anything, any more of a response than just from the county that those just aren't reasonable accommodations? Was there any sort of exchange of, well, maybe it's possible? It appears that the Office of Diversity, Teresa Scoopy was the, Teresa Scoopy, who was the former director of the Office of Diversity at the time, was the one who made the decision, I think her affidavit is in the record, that those accommodations were not possible. I think the, I'm not using her exact words, but essentially they saw those recommendations, they felt they were vague and they were not reasonable for the county's concern to implement those. And so essentially there was some dialogue going back and forth to try and accommodate his disability, but the county felt it was unreasonable. Our contention was that these two very simple ideas from his two doctors were reasonable accommodations that were never allowed to be implemented and never allowed to be tried because the county just jumped to getting rid of him through this faulty medical separation process. So in the end, where do you think the district court went wrong? I believe the district court, obviously, for my contention, it's the issue of whether the county had looked at the reasonable accommodation issue. I mean, whether they, I don't think the district court had it before him. Certainly the Rekhoman's letter and Dr. Collins' letter was there. I think the district court erred in finding that, one, he wasn't qualified for his job because of the absences issue, which the absences are directly related to his anxiety and disorder and depression that the county was not accommodating for. So he's being punished for having this condition. Being associated with a disability isn't a pass. You've got to be qualified. Somebody whose disability is blindness can't say, well, the reason I can't read that book is that I can't see. Right. I understand that his absences are linked to his disability, but when his doctor says, in answer to a question, what do you expect over the next six months, says he's going to be absent two to six weeks, two to three times a year, what's the county supposed to do with that? The county, as a government employer, has certain rights and obligations to all its employees required under Nevada law and federal law. For state law issues, which you're still free to bring. Right, right. Under the ADA, how does that make the employee qualified? First of all, I would submit that Brandon Lane could do the job as a senior shopkeeper. He'd done it for a number of years. He knew how to do the job, the qualifications he could do it. Well, then I look at the other doctor certification, which tells us that the activities that will be adversely affected include speak, think clearly, interact with others, learn, perform analytical tasks, and concentrate. Are you saying that the county couldn't fairly look at the job description and say, this is a problem? The county could look at that, but, yeah, I think Mr. Lane could do that. The district court found that part of his job duties included juggling tasks and accepting some amount of teasing from his coworkers. That's not in his job description as a senior shopkeeper with the county. Yet the district court, in its order, found that this is something you should put up with. Yes, sir? Could he review the work of others if he's not there? Could he review the work of others? If he's not there. I mean, if he's not there, I mean, obviously. Could he review the work of others if he's not there? I'm afraid I don't get it. If he's not there, others could replace his job, of course, because it's a senior shopkeeper is something they had a number of those in the department. There's three or four different employees that did their work. Forgive me if I don't understand the question, but. Well, I understand that part of his duties were to review the work of others. To review the work of others. Yes. Well, he did not have a supervisory role. Normally one would think if you're reviewing the work of others, you have some sort of supervisory responsibilities. He did not have that in that position. He had no supervisory responsibilities whatsoever. No, no. There was a supervisor in the department, a lady named Sue Demick, and she was the small shop there at the county's Juvenile Justice Services Center. So that may have been in the job description, which is on file, but in reality that was not supervising employees was not one of his jobs or functions that he had. I'd like to, if there are no other questions, I'd like to reserve the balance of my time. Thank you for your time. Sure. Thank you. Yes, sir? Thank you. May it please the Court, Yolanda Givens, Deputy District Attorney on behalf of Clark County. Mr. Lane was not a qualified individual with a disability, and therefore he was not entitled to any of the ADA protections. This Court is familiar with the, in fact, the Ninth Circuit has adopted the two-prong test to determine whether or not an employee is qualified under the ADA for a disability, entitling him to ADA protections. That two-prong test first does the employee possess the skills, experience, education, or other job requirements. It's the county's position in this case that although in the past Mr. Lane could perform the job skills. He was doing the job. He was doing the job. He was doing the job. At the time that the decision was made, however, to deny any sort of ADA accommodations, he was not able to demonstrate that he could perform the skills. And so that was also part of the evaluation and assessment process by the county. He was out of work for a substantial period of time. Correct, Your Honor. When he came back, he wanted to come back, he came back, he wanted some accommodations. Your Honor, he never came back. I thought he came back there for a little period. Mr. Lane left the workplace June 23, 2009. He never returned. There was a separation of employment in October of 2009. But didn't this all start in late 2008? Actually, what happened is he initially approached the Office of Diversity for an accommodation in the latter part of 2008, had been on the tail end of an FMLA leave. Right. After the conclusion of that leave, actually asked to be placed in another department, requested an accommodation. Office of Diversity did an assessment and said, oh, you're just claiming that you can't work in this department. Therefore, you're not precluded from a list or series, classifications of jobs. Therefore, you're not disabled. At that point, that's what the assessment was. Then his doctor, Dr. McCormick. He came back to work sometime in early. He came back to work, I want to say, in latter December, worked off and on through April. He was out for the fall of 2008. Correct, FMLA. He comes back in late December, I think it's like December around Christmas. And then he's there until early April. Correct. And during that time, was there a question about his ability to perform? There's no question at all about his ability to perform. So he kind of meets the first prong. Correct. Correct. The second prong, however, able to perform the fundamental job duties, the essential functions. There's also a two-prong test with that particular aspect. And it's the county's position that he could not regularly attend work and that that's an essential function. We've got the Samper case here in the Ninth Circuit, the Tyndall case from the Fourth Circuit, Gant from the Sixth Circuit, Byrne from the Seventh Circuit, all agreeing that regular, reliable attendance is an essential function of the job. And, again, I want to emphasize that June 23, 2009, to the time of separation October 2009, Mr. Lane never returned to work. There was no intermittent leave that was in play in this case. Additionally, not only did he not return to work, he never provided a release that he could return to work. His own health care providers never gave him the authority to come to work. He never became, if you will, healthy enough to return. Interestingly enough, and I think it was before the record in the lower court, is that by the time I am deposing Mr. Lane in January of 2012, so he's separated from the county, October of 2009, I'm deposing him almost two and a half years later. He had still never been able to return to work and still had never received a release to return to work. And so it's critical, it was critical in the county's assessment prior to separation that Mr. Lane could not perform the essential function of attendance to work. It's a case that I cited for, Your Honors, Byrne v. Avon Products, where it indicates that the inability to work in a multi-month period removes the person from the protections of the ADA. And the visiting judge, I apologize, I forget your name, was asking about whether or not there were supervisory responsibilities. And I think what happened is, if you'll look at the job description and I think job functional analysis that was presented and part of the record, it indicated that Mr. Lane was expected to, in some instances, provide lead and direct staff. He was one of the more senior employees there in the store. He was a senior storekeeper there in the juvenile justice department. Let me ask, so an employee needs, like, kind of a go-to person? Correct. Does the county provide that for workers? A go-to person? Yeah, sort of like, you know, I'm having my, I'm really having a hard time with my supervisor or somebody, and I just need to talk out my problems. Certainly. Does the county do that? Sure. The county has, you have several options. One, you can go through your chain of command. You can go to your supervisor and say, I'm having difficulty. I need some sort of reprieve here, some investigations and things like that. Well, I mean, just somebody you can call on the phone and talk to. And we have an employee assistance program Mr. Kennedy referenced. Her name is Felice Lipkett. And we've got a staff there that's able to. So one of the doctors suggested, well, you know, he needs a job coach, he needs somebody, he needs counseling, he needs whatever. Was this assistance ever suggested as well? I believe that there was some sort of, if you will, let's sit the whole store down, the whole, it's the warehouse is what it's called, and everybody let's try to talk out what the difficulties may be. And I don't think that that was in response so much, Your Honors, to the ADA accommodation and or the suggestions by the doctor. I think it was just a suggestion by management so that we can get, everything was running smoothly up to a point and they wanted to get it back to where the store was. But the real problem here then from the county's perspective was inability to be at work. Correct. And if I might address this whole interactive aspect to the reasonable accommodations, I cited a case that indicates that an interactive process claim cannot be successful if the interactions would have led to the discovery, would not lead to the discovery of a reasonable accommodations, accommodation that neither of the accommodations that any of the doctors suggested would have placed Mr. Lane back into the workplace. And so it was, the county candidly did not even get to the question of whether or not there needed to be interactivity because we had concluded that he wasn't a qualified individual, therefore he wasn't entitled to any sort of ADA accommodations. But if Your Honors are concerned about whether or not there was this sort of interactivity, I would suggest that there's case law that would indicate that it wasn't even necessary because the accommodations that were being suggested by the doctors were not, first of all, reasonable and they were vague, but they also wouldn't have allowed him to perform the essential functions of attending work. Well, that, you know, I think that's probably the difficulty here. But on the other suggested accommodation, there could have tried some of these employee assistance kinds of programs for him. Well, I guess I'm... You know, there could have been some dialogue about that, but the problem here is really with his inability to be at work if he were to have an attack. And that was, I would say that that was the most compelling aspect for the county ultimately in deciding that he wasn't a qualified individual with a disability is because we didn't have any information, even in the documents where the doctors indicated what his impairments were and their suggested accommodations, there was never any indication, oh, and he can come back to work. There was never any release for him to return to work. And also there was an opportunity prior to the medical separation, Your Honors,  to come in and suggest to us can we try other things. He never even participated. He never participated in the idea of let's see if there's alternative other work in some other aspect of the county that would coincide, if you will, with the restrictions that your doctors are indicating you have. He never participated. It was as though he fell off the face of the earth after leaving the workplace. And so that made it very difficult for the county to, I guess, receive information. It was the lawsuit, basically, that told us that he was even interested in continuing to work. And so I'll just submit it unless Your Honors have any questions. Doesn't look like it. Thank you. Unless there's any other questions, I believe the horse is dead. Okay. Thank you. Thank you. That matter is submitted.
judges: Paez, Clifton, Duffy